UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

MALCOLM MADISON,

        Plaintiff,

    -v-                                       No.  19 CV 5234-LTS-JLC

STEVEN A. BANKS, COMMISSIONER OF
THE DEPARTMENT OF HOMELESS
SERVICES, and THE CITY OF NEW
YORK,

        Defendant(s).

-------------------------------------------------------x

## MEMORANDUM ORDER

        Plaintiff Malcolm Madison ("Plaintiff"), proceeding pro se and in forma pauperis,

brings this action alleging that his constitutional and civil rights were violated while he was in

New York City's homeless shelter system, and seeking damages and injunctive relief.  Plaintiff

commenced this action on June 3, 2019, by filing a complaint asserting claims against Steven A.

Banks, the Commissioner of the Department of Homeless Services ("DHS") ("Commissioner

Banks"), and DHS.  (See docket entry no. 2.)  On July 8, 2019, Chief Judge McMahon dismissed

sua sponte Plaintiff's claims against Commissioner Banks and DHS for failure to state a claim;

the Court granted Plaintiff leave to amend his complaint and directed him to detail specifically

"who violated his federally protected rights; what facts show that his federally protected rights

were violated; when such violation occurred; where such violation occurred; and why Plaintiff is

entitled to relief."  (Docket entry no. 7, the "Order to Amend.")  The Order to Amend also

directed Plaintiff to name "in the caption those individuals who were allegedly involved in the deprivation of his federal rights." Id.

On September 4, 2019, Plaintiff filed an Amended Complaint (docket entry no. 8, the "AC"), in which he again named Commissioner Banks and DHS as defendants, and alleged that he was denied services, assaulted and falsely accused of misconduct at the direction of one or more shelter staff members, and that the named defendants failed to investigate incidents involving assaults and stolen property while he stayed at two homeless shelters in Brooklyn, in violation of his constitutional and civil rights. Id. On October 17, 2019, the Court dismissed the claims against DHS and directed that the City of New York (the "City") be added as a defendant. (See docket entry no. 11.)

On February 10, 2020, Commissioner Banks and the City (together, the "Defendants") filed a motion to dismiss the AC. (See docket entry no. 19, the "Motion.") Plaintiff did not file any papers in opposition to the Motion. On July 9, 2020, Plaintiff filed a second amended complaint, and a supplemental second amended complaint on July 13, 2020, both of which name Commissioner Banks as the sole defendant and comprise allegations concerning incidents at the Fort Washington Shelter in Manhattan in the year 2020, in which Plaintiff alleges that he was attacked or threatened by other residents and/or was ignored by staff or 911 responders when he asked for help. The Second Amended Complaint includes an allegation that "DHS has put a contract out on [Plaintiff's] life on behalf of [his] suit against Steven Banks who has a contract with Russian Jews." (See docket entry nos. 23-24.) On July 17, 2020, Plaintiff filed a declaration containing further allegations that shelter staff targeted him for harassment and false accusations, and a motion for leave to amend the AC to "add more legal material." (See docket entry nos. 25-26.) On August 10, 2020, Plaintiff filed a complaint

amending the supplemental second amended complaint, naming Commissioner Banks as the sole defendant, and alleging that he was attacked by a gang-affiliated staff member and intimidated by other residents.  (See docket entry no. 27.)

The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.  The Court has considered carefully all of the parties' submissions and, for the reasons stated below, the Defendants' motion to dismiss the amended complaint is granted for failure to state a claim upon which relief may be granted to the extent it asserts federal claims, and the Court declines to exercise jurisdiction of any state law claims.  Plaintiff's motion for leave to amend the AC further is denied.

BACKGROUND

The following is a summary of the facts alleged in the AC.

In August 2016, Plaintiff arrived at Harry's Place ("HP"), a homeless shelter in Brooklyn, NY.  (AC at 5.)  While he was residing at HP, Plaintiff submitted a complaint at 33 Beaver St.[1]  (Id. at 6.)  After Plaintiff submitted his complaint, Mrs. Johnson, a director at HP and a member of the Nation of Islam, "gave a contract to her underlings to get [Plaintiff]" and had some "Blood members" assault him.  (Id. at 6-7.)  As a result, Plaintiff received "6 stitches on [his] right eye."  (Id. at 6.)

After the incident at HP, Plaintiff was sent to CAMBA Housing ("CH"), another homeless shelter in Brooklyn.  (Id.)   Mrs. Johnson regularly made appearances at CH, during which she falsely accused Plaintiff of "doing things" to make him "look like a bad guy" and his property would go missing.  (Id. at 7.)  Mrs. Johnson's "boyfriend or husband" also worked at

---

[1]     The office of the Commissioner of DHS is located at 33 Beaver Street, New York, NY.  See https://www1.nyc.gov/site/dhs/about/contact.page (last accessed August 24, 2020).

CH as a supervisor and, during that individual's shifts, Plaintiff's property—specifically, a Lenovo laptop computer and an Apple mini iPad—was stolen. (Id.)  As a result, Plaintiff again submitted a complaint at 33 Beaver St. to a woman whose last name was "Banks."  (Id.) Plaintiff's complaint went unanswered.  (Id.)

       On August 5, 2019, Plaintiff was assaulted by a "Black Nation of Islam Man" while Plaintiff was sleeping.  (Id. at 8.)  The assaulter was arrested.  (Id.)  As a result, security officers and DHS police labeled Plaintiff as a "snitch" and "blatantly" told others to disregard any future complaints made by Plaintiff.  (Id.)

       On a separate occasion, Plaintiff was in his bed when "10-15 Blood members" came into his room and were about to "jump[] on [him]" until they were talked out of it.  (Id. at 10.)  After the incident, Plaintiff went to security and told them what happened; security disregarded him.  (Id.)  On a final occasion, "3 Gang members tried to attack [Plaintiff.]"  He again went to security and asked them to call the police; "[they] did nothing."  (Id. at 10-11.) Plaintiff called the police himself, but when the police came, the security officers "made [him] out to be the bad guy" and the NYPD tried to arrest him.  (Id. at 11.)  Thereafter, Plaintiff "went to 33 Beaver St. and they did nothing."  (Id.)  As a result, Plaintiff left the shelter system.  (Id.)

       Plaintiff alleges that his civil and constitutional rights were violated.  He asserts that "Mexican immigrant[s] have more rights than [him]" and their rights are "more respected" than Plaintiff's rights even though he is a citizen of the United States.  (Id. at 8.)  Plaintiff seeks $100,000,000.00 in damages and a "decent apartment."  (Id. at 6.)

<u>DISCUSSION</u>

The Court liberally construes the AC to be asserting constitutional claims pursuant to 42 U.S.C. § 1983 ("section 1983") that Defendants violated Plaintiff's rights by having him assaulted, failing to investigate his complaints, and failing to protect him from assaults at HP and CH.

<u>Standard of Review</u>

When evaluating a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss a complaint, the Court accepts as true the nonconclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.  <u>Roth v. Jennings</u>, 489 F.3d 499, 501 (2d Cir. 2007).  A plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; the plaintiff must plead specific facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  <u>Id.</u>

The Court is obligated to construe <u>pro se</u> pleadings liberally, <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they suggest." <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994).  However, "the basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike[,]" <u>Wynder v. McMahon</u>, 360 F.3d 73, 79, n.11 (2d Cir. 2004), and "threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice."  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir.

2010) (internal citation omitted).  The Court may not "invent factual allegations" that plaintiff

has not pleaded.  Id.

Section 1983 Claims

    It is not clear whether Plaintiff is suing Commissioner Banks in his individual

capacity, his official capacity, or both.  To state a section 1983 claim against an individual,

Plaintiff must allege both that (1) a right secured by the Constitution or laws of the United States

was violated, and (2) the right was violated by a person acting under the color of state law.  West

v. Atkins, 487 U.S. 42, 48-49 (1988).  In order for an individual defendant to be held liable under

section 1983 for a constitutional violation, the plaintiff must demonstrate the defendant's

personal involvement in the alleged constitutional violation.  See Hernandez v. Keane, 341 F.3d

137, 144-45 (2d Cir. 2003).  Personal involvement of a supervisory defendant may be shown in

in one or more of the following ways:

> (1) actual direct participation in the constitutional violation, (2) failure to remedy
> a wrong after being informed through a report or appeal, (3) creation of a policy
> or custom that sanctioned conduct amounting to a constitutional violation, or
> allowing such a policy or custom to continue, (4) grossly negligent supervision of
> subordinates who committed a violation, or (5) failure to act on information
> indicating that unconstitutional acts were occurring.

Id. at 145.  "It is well-settled that where the complaint names a defendant in the caption but

contains no allegations indicating how the defendant violated the law or injured the plaintiff, a

motion to dismiss the complaint in regard to that defendant should be granted."  McCoy v.

Goord, 255 F. Supp. 2d 233, 258 (S.D.N.Y. 2003) (internal quotation marks omitted); see Gill v.

Mooney, 824 F.2d 192, 196 (2d Cir. 1987) (affirming dismissal where plaintiff's complaint was

"silent as to anything which [supervisor defendant] did or failed to do" because, "[a]bsent some

personal involvement by [defendant] in the allegedly unlawful conduct of his subordinates, he

cannot be held liable under section 1983.").  At most, Plaintiff alleges that he submitted his

complaints at 33 Beaver St. to someone with the last name "Banks," but Plaintiff indicated that

this was a woman who worked at 33 Beaver St. rather than Commissioner Banks himself.  The

AC contains no allegations of any actions taken by Commissioner Banks, and therefore must be

dismissed to the extent Plaintiff sues Commissioner Banks in his individual capacity.

        To the extent Plaintiff is suing Commissioner Banks in his official capacity, the

claim is treated as one against the City of New York.  See Coon v. Town of Springfield, Vt., 404

F.3d 683, 687 (2d Cir. 2005) ("[A] § 1983 suit against a municipal officer in his official capacity

is treated as an action against the municipality itself.")  To state a claim under section 1983

against a municipality, Plaintiff must allege plausibly that the municipality itself, not merely one

or more employees of the municipality, violated Plaintiff's rights.  See Connick v. Thompson,

563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under [section

1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a

person 'to be subjected' to such deprivation.") (quoting Monell v. Dep't of Soc. Servs. of City of

New York, 436 U.S. 658, 692 (1978)).  Thus, to sufficiently state a claim against a municipality,

Plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice,

and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional

rights.  Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012).  Furthermore, "isolated

acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a

municipal custom, policy, or usage that would justify municipal liability."  Id. at 81 (citation

omitted).  Plaintiff's claim fails against the City because he has not alleged the existence of any

policy, custom, or practice as a result of which his rights were violated.  Plaintiff's allegations

that his complaints submitted at 33 Beaver St. and requests for investigations into the assaults

were disregarded are insufficient to state a section 1983 claim; even if Plaintiff's complaints and requests were unheeded by individual municipal employees, and even if he was injured by or at the direction of shelter staff members, such allegations are not sufficient to demonstrate the existence of a City custom, policy, or practice that caused the alleged constitutional violations.

For these reasons, the Court finds that Plaintiff has failed to plead facts sufficient to state plausibly a claim for relief under federal law as against Commissioner Banks in his individual or official capacities, or against the City, and the motion to dismiss Plaintiff's federal law claims under Rule 12(b)(6) must therefore be granted.

State Law Claims

To the extent that the AC asserts any state law causes of action, such as claims in tort for theft or assault, the Court declines pursuant to 28 U.S.C. section 1367(c)(3) to exercise supplemental jurisdiction.  Thus, this decision does not preclude Plaintiff from seeking to pursue his claims about incidents in the shelter system in state court or through administrative channels.

Motions for Leave to Amend

The Court construes Plaintiff's filings of amended and supplemental amended complaints, a declaration and a notice of motion to "add more legal material" as motions for leave to make further amendments to the AC.  (See docket entry nos. 23-27.)  Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave" to amend a complaint "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Liberal application of Rule 15(a) is warranted with respect to a pro se litigant, who "should be afforded every reasonable opportunity to demonstrate that he has a valid claim."  Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000) (internal quotation marks omitted).  District courts "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any

indication that a valid claim might be stated."  Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir.

2000) (internal quotation omitted).  However, leave to amend may properly be denied for, among

other reasons, "repeated failure to cure deficiencies by amendments previously allowed . . . [and]

futility of amendment[.]"  Foman v. Davis, 371 U.S. 178, 182 (1962)).  "'A proposed

amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to

Rule 12(b)(6).'"  Martin v. Dickson, 100 F. App'x 14, 16 (2d Cir. 2004) (summary order).  This

is true even when plaintiff is proceeding pro se.  See Id.

       Here, Plaintiff has filed a second amended complaint and a supplemental second

amended complaint to assert claims against Commissioner Banks arising from incidents at

another shelter.  (See docket entry nos. 23-24.)  A liberal reading of Plaintiff's proposed

amendments demonstrates that leave to amend would be futile; other than alleging that

Commissioner Banks "has a contract with Russian Jews" and that, as a result, "DHS has put a

contract out on [his] life," Plaintiff again fails to plead any specific facts regarding

Commissioner Banks' personal involvement in the alleged violations of Plaintiff's constitutional

and civil rights.  (Docket entry no. 23 at 6.)  Moreover, Plaintiff has already been given an

opportunity to amend his complaint to include specific details regarding "who violated his

federally protected rights; what facts show that his federally protected rights were violated; when

such violation occurred; where such violation occurred; and why Plaintiff is entitled to relief,"

and to name as individual defendants the specific people who allegedly took actions that violated

his rights.  See Order to Amend.  Plaintiff failed to plead sufficient additional facts in the AC to

state plausibly his claims against the named Defendants, and his additional filings do not cure

that defect.  Plaintiff's conclusory allegation that DHS has a "contract" out on him because

Commissioner Banks has a "contract" with the "Russian Jews" is insufficient to demonstrate

plausibly that any of the alleged incidents was the product of personal involvement of Commissioner Banks or of a City policy, practice, or custom. Accordingly, Plaintiff's motion for leave to amend the AC is denied. This decision does not preclude Plaintiff from bringing a different action against specific individuals he claims violated his rights. The complaint in any such action would have to include specific facts showing that his rights were violated and what the defendants themselves did to violate his rights.

<u>CONCLUSION</u>

For the foregoing reasons, the Defendants' motion to dismiss the federal law claims asserted in Plaintiff's Amended Complaint is granted, and the Court declines to exercise jurisdiction of Plaintiff's state law claims, if any. Plaintiff's motion for leave to amend the Amended Complaint is denied.

This memorandum order resolves docket entry nos. 19 and 26. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore <u>in forma pauperis</u> status is denied for the purpose of an appeal. <u>See Coppedge v. United States</u>, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

Dated: New York, New York
        August 24, 2020

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge